UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW JACK LEVANDUSKI,

                Petitioner,                      Case Number 21-10571
                                                      Honorable David M. Lawson

v.

WILLIS CHAPMAN,

                Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Matthew Levanduski was convicted of a drug crime and sentenced by a Michigan court to more than 11 years in prison. After he found no relief from his conviction or sentence in the Michigan appellate courts, he filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 without the assistance of a lawyer. He argues here that the Michigan courts mishandled his claim of ineffective assistance of counsel. However, the record reveals that the state courts' decisions did not contravene or unreasonably apply federal law. Therefore, the Court will deny the petition.

I.

Levanduski was tried before a jury in the Livingston County, Michigan circuit court on charges of possession with intent to deliver 1,000 grams or more of cocaine, carrying a concealed weapon, and carrying a firearm while committing a felony. The trial took place in 2017, but the arrest that led to the charges occurred in 2004. The Michigan Court of Appeals summarized the facts of the case based on the trial court record in its opinion on direct appeal as follows:

On April 27, 2004, Livingston County police officers were called to a gas station in Brighton in response to a "trouble with a customer." The gas station attendant

had called the police because defendant appeared agitated and was having problems with the Western Union machine, and the attendant feared that he was going to drive away without paying for the gas he had pumped.  After police arrived, defendant told them that he was having problems with the Western Union machine and was waiting for a friend to send him money so he could pay for gas.  Officers walked with defendant to his car, where Magda Cano and a man named Mendez were sitting.

At trial, defendant testified that he met Cano at a party, and she offered to pay him to drive her to Chicago and back to pick up her brother because her license was suspended.  According to defendant, when Cano arrived at defendant's house with the car defendant would drive, she brought Mendez with her.  Defendant said that Cano directed him to Chicago, where they stopped at a restaurant to eat lunch and meet Cano's brother.  While at the restaurant, Cano received a phone call, went outside to put some bags in the car, came back inside, and told defendant and Mendez that they were ready to leave, even though Cano's brother was not there.  Defendant testified that Cano told him that something had come up and her brother would not be coming with them.  Knowing that he was being paid to drive regardless of who was with them, defendant got in the car and drove back to Michigan.  Defendant said that during the drive, he "had a feeling that something felt off," so he pulled over and started looking around the car.  When he opened the trunk, he saw a bag with the butt of a gun sticking out of it.  According to defendant, he opened the bag and saw packages that appeared to be drugs, and when he turned around, Cano reached past him and pulled the gun out of the bag.  Defendant said that Cano told him to get back in the car, and fearing for his life, he got back in the car and continued driving.

Defendant testified that they ended up at the gas station in Brighton — even though the plan was for him to drive from Chicago to Grand Rapids — because he was following Cano's directions.  Livingston County Sheriff's Deputies David Klein and Brian Chuff responded separately to the "trouble with a customer" call.  Once the officers were at the car with defendant, Deputy Klein asked for Cano's and Mendez's names, and learned that Mendez had an outstanding warrant.  Deputy Klein took Mendez into custody and asked Cano to step out of the car.  Deputies Klein and Chuff then searched the passenger compartment.  Deputy Chuff found a gun and ammunition inside a woman's purse on the floor in the backseat, where Cano had been sitting.  Deputy Klein found a notebook, a calculator, and five cell phones.  On defendant's person, Deputy Klein found $225 in cash and a $400 Western Union receipt.  The deputies also searched the trunk, where Deputy Klein found two bricks of cocaine inside a woman's purse, which was inside another bag filled with clothing.  At that point, the deputies curtailed the search until a police dog could be brought in.  The deputies took the car to the Sheriff's Department

where a police dog signaled the presence of drugs on the left side of the trunk. There, Deputy Klein found a third brick of cocaine inside a box of protein powder. The cocaine contained markings that, combined with the amount discovered, were consistent with sale or distribution.

A DEA task force then took over the investigation. Defendant provided a written statement claiming that the gun and cocaine were not his although he had touched them, and that he had stopped at the Western Union to pick up gas money. Defendant testified that he told the DEA agents that Cano had threatened him with a gun but they had not believed him. The DEA task force determined that the quantity of cocaine and the presence of a firearm merited a federal investigation, but they released the three suspects in hopes of learning about the source of the cocaine, which totaled nearly three kilograms. Defendant moved to Florida one month later.

. . .

In July 2004 — three months after the events described above — the Livingston County prosecutor filed a warrant and felony complaint charging defendant with (1) delivery or manufacture of 1,000 or more grams of a controlled substance (cocaine), MCL 333.7401(2)(a)(i), (2) carrying a concealed pistol in a vehicle, MCL 750.227(2), and (3) felony-firearm, MCL 750.227b(1). The warrant authorized nationwide extradition. In January 2007, defendant's trial counsel, Jeffrey Kortes, entered his appearance on defendant's behalf. Defendant did not return to Michigan until April 2016 when he was arrested for an unrelated offense in Florida. Defendant waived extradition and arraignment. Trial in Michigan was adjourned for various reasons, including ongoing plea negotiations, the examination of potentially exculpatory evidence, docket congestion, and defendant's request for prosecutorial assistance in locating Cano and Mendez to testify as witnesses in his defense. Because of the delays, defendant was not tried until June 2017.

*People v. Levanduski*, No. 341934, 2019 WL 3806944, at *1-2 (Mich. Ct. App. Aug. 13, 2019).

The jury found Levanduski guilty of possession with intent to deliver 1,000 grams or more of cocaine and not guilty of the two firearm charges. On July 20, 2017, he was sentenced to a prison term of 11 years, 4 months to 25 years.

-3-

Levanduski filed a direct appeal and a motion to remand requesting an evidentiary hearing on claims of ineffective assistance of counsel based on his lawyer's failure to raise a speedy trial claim, request a duress jury instruction, challenge the search of the car trunk, and follow up on the prosecution's efforts to locate Cano and Mendez. *Id.* at *2-3. The court of appeals granted the motion to remand. *Ibid.* Following a hearing where Levanduski and defense counsel testified, the trial court held that Levanduski could not establish an ineffective assistance of counsel claim. *Ibid.* The case returned to the Michigan Court of Appeals, which affirmed Levanduski's convictions. *Ibid.* The Michigan Supreme Court denied leave to appeal. *People v. Levanduski*, 505 Mich. 1040, 941 N.W.2d 624 (2020) (mem.).

Levanduski then filed his petition for a writ of habeas corpus in this Court asserting the following arguments:

I.    Was Levanduski denied his constitutional rights to the effective assistance of counsel where counsel:

(A) fail[ed] to challenge the search of the vehicle's trunk and seek suppression of the seized evidence;

(B) fail[ed] to request and secure a supported jury instruction for duress thereby depriving Levanduski of his only substantial defense contrary to his guaranteed rights under the U.S. Sixth and Fourteenth Amendments and Mich. Const. 1963 Art 1 §§ 17 and 20;

(C) fail[ed] to seek dismissal of the charges by asserting his right to a speedy trial guaranteed him through the U.S. Sixth Amendment and Mich. Const. 1963 Art 1 § 20;

(D) failed to request a due-diligence hearing for two missing res gestae witnesses

II.      Was Levanduski denied a fair trial when his defense counsel failed to challenge confrontation when the jury likely conducted a handwriting analysis during deliberations.

III.     Was Levanduski denied his Sixth Amendment right to effective assistance of counsel when his trial attorney failed to properly advise him of the consequences of being found guilty and plea negotiations.

Pet. at iv, ECF No. 1, PageID.19.

The warden responded that Levanduski's second claim is procedurally defaulted in part and that all his claims are meritless.  The "procedural default" argument is a reference to the rule that the petitioner did not preserve properly some of his claims in state court, and the state court's ruling on that basis is an adequate and independent ground for the denial of relief.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  But the Court finds it unnecessary to address the procedural question, because it is not a jurisdictional bar to review of the merits, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  The procedural defense will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

## II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  The AEDPA provides a "highly deferential

standard for evaluating state-court rulings[.]" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). That means federal courts give the state court "the benefit of the doubt," *ibid.*, applying that "statutorily prescribed deference," *Michael v. Butts*, 59 F.4th 219, 225 (6th Cir. 2023) (citing 28 U.S.C. § 2254(d); *English v. Berghuis*, 900 F.3d 804, 811 (6th Cir. 2018)).

A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)).

Levanduski asserts that his trial counsel's performance was deficient in at least six instances, which resulted in the denial of his right to the effective assistance of counsel. The record does suggest that defense counsel was less than vigorous in asserting possible pretrial motions and trial defenses. The trial court determined that the attorney did not perform deficiently because the issues he passed up were not meritorious or that no prejudice resulted from any deficient performance. The court of appeals agreed with those rulings.

The following general rules apply to ineffective assistance of counsel claims asserted in habeas petitions. To start, the Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. When counsel is ineffective, that right is abridged. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).

An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient, and that deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance meets the first element when "counsel's representation [falls] below an objective standard of reasonableness." *Id.* at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688) (quotation marks omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

Success on ineffective assistance of counsel claims is relatively rare, because the *Strickland* standard is "'difficult to meet.'" *White*, 572 U.S. at 419 (quoting *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013)).  And under AEDPA, obtaining relief under *Strickland* is even more difficult because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (citations and quotation marks omitted).  This doubly-deferential standard requires the Court to give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013).  "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

A.

Levanduski argues that his attorney performed deficiently because he did not challenge the search of the vehicle's trunk and file a motion to suppress the seized evidence.  The Michigan Court of Appeals held that that the search of the trunk was lawful under the automobile exception

-8-

to the warrant requirement, and therefore defense counsel did not make a mistake by failing to file a meritless suppression motion. *Levanduski*, 2019 WL 3806944 at *7-9. The court held that, considered together, the gun and ammunition found in the purse on the floor of the backseat, $225 cash and the $400 Western Union receipt, notebook, calculator, five cell phones, and the differing explanations provided by the vehicle's occupants provided probable cause for a search of the trunk under the automobile exception. *Id.*at *8.

Where a habeas petitioner asserts counsel's failure to raise a Fourth Amendment claim as the basis for counsel's ineffectiveness, the petitioner "must prove that [the] Fourth Amendment claim is meritorious." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Here, that requires an evaluation of the state court's holding that the warrantless vehicle search was lawful.

The Fourth Amendment ordinarily requires police officers to obtain a warrant before conducting a search. *Maryland v. Dyson*, 527 U.S. 465, 466 (1999). The automobile exception to the warrant requirement allows police officers to conduct a warrantless search of a vehicle if they "have probable cause to believe that the vehicle contains evidence of a crime." *Carter v. Parris*, 910 F.3d 835, 839 (6th Cir. 2018) (quotation omitted). The scope of the automobile exception is broad: "So long as 'probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of *every part* of the vehicle and its contents that may conceal the object of the search.'" *Id.* at 840 (quoting *United States v. Ross*, 456 U.S. 798, 825 (1982)) (emphasis in *Carter*).

Levanduski maintains that the money, notebook, calculator and at least some of the cell phones were found in the trunk and, therefore, could not establish probable cause for searching the trunk. The record on where some of these items were found is not clear. Deputy Klein could not

-9-

recall where the calculator and notebook were discovered.  ECF No. 13-5, PageID.793-796.  He recalled that three cell phones were discovered in the passenger compartment but could not recall and his written report did not state where the two additional cell phones were located.  Nevertheless, whether these items were discovered in the trunk or passenger compartment does not alter the Court's analysis of the automobile exception's applicability.

It was reasonable for the state courts to determine that the automobile exception to the warrant requirement applied on this record.  Levanduski acted with sufficient agitation to prompt a 911 call, Mendez initially gave a false name and was then arrested pursuant to an outstanding warrant, Cano made furtive movements when a deputy approached the car and threw her purse on the floor of the car, the car's three occupants acted nervous and gave differing explanations to explain their travel and location.  It is true that the incriminating items found in the trunk would not contribute to the probable cause calculus.  But the officers had sufficient information *before* they looked in the trunk to formulate a reasonable belief that the vehicle contained evidence of a crime, which satisfies the automobile exception to the warrant requirement.  Because Levanduski's underlying Fourth Amendment claim lacks merit, he cannot show that the state court's denial of his underlying ineffective assistance of counsel claim was unreasonable.  *Kimmelman*, 477 U.S. at 375.

## B.

Next, Levanduski argues that defense counsel was ineffective because he did not request a jury instruction for the defense of duress.  For duress to excuse the commission of a crime, the defendant must produce some evidence of threatening conduct that creates an honest and

reasonable belief in his mind that he had to commit the criminal acts to avoid the harm. *People v. Lemons*, 454 Mich. 234, 247, 562 N.W.2d 447, 453 (1997). The court of appeals acknowledged that there was evidence in the record to support the defense, but it ascribed defense counsel's omitting a request for the jury instruction to a strategic decision. *Levanduski*, 2019 WL 3806944 at *6-7. It observed that the defense strategy at trial was to establish that Levanduski never possessed the gun or cocaine, a gambit that was partially successful, since the jury acquitted Levanduski of both weapon possession charges. The court acknowledged that counsel could have argued alternative theories — "defendant did not possess the gun and cocaine, but even if he did, it was under duress" — but doing so would have diluted the defense's principal theory of the case. *Id.* at *7.

The court's decision was consistent with applicable federal law. Where defense counsel's conduct challenged by the petitioner amounts to legitimate trial strategy, habeas courts will not find that counsel performed deficiently. *Robins v. Fortner*, 698 F.3d 317, 337-38 (6th Cir. 2012). The state courts' determination that foregoing a duress defense did not constitute deficient performance was reasonable for the reasons articulated by the court of appeals. And on the present record, there were additional considerations that support defense counsel's choice. The duress defense might have been considered the weaker of the defense theories because Levanduski failed to advise the responding officers at the arrest scene about his perilous situation. He spoke to the officers outside the presence of Cano and Mendez. At that point, the threat was no longer imminent and he could have obtained assistance. Under Michigan law, "a defendant . . . forfeit[s] the defense of duress" when he "does not take advantage of a reasonable opportunity to escape, where that can

be done without exposing himself unduly to death or serious bodily injury," and where the defendant "fails to terminate his conduct as soon as the claimed duress . . . ha[s] lost its coercive force." *Lemons*, 454 Mich. at 247 n.18, 562 N.W.2d at 454 n.18 (quoting 1 LaFave & Scott, *Substantive Criminal Law*, § 5.3, pp. 619-20) (cleaned up).

The Michigan Court of Appeals's denial of Levanduski's ineffective assistance of counsel claims was neither contrary to nor an unreasonable application of *Strickland*.

## C.

Levanduski also argues that his attorney was ineffective by failing to raise a speedy trial claim. The seminal case prescribing the factors that must be evaluated when such claims are raised is *Barker v. Wingo*, 407 U.S. 514 (1972). The Michigan Court of Appeals, although not citing that case, nonetheless applied its factors and determined that Levnduski's right to a speedy trial was not violated, even though the trial post-dated the initial arrest by some 13 years. The court reasoned that the length of the delay should be measured not from the initial arrest, where Levanduski was released, but from the arrest and extradition in April 2016 after the charges actually were filed. It determined that the 14-month delay before trial was not presumptively unreasonable, a good amount of the delay was attributable to Levanduski himself or to both parties, and no prejudice flowed from the delay, even though two witnesses could not be located.

It is well established that a criminal defendant has a right to a speedy trial under the Sixth Amendment. U.S. Const. amend. VI. *Barker* identified four factors to balance when determining if that right was abridged: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his or her right to speedy trial; and (4) prejudice to the defendant. *Barker*,

-12-

407 U.S. at 530. The Sixth Amendment's Speedy Trial Clause does not extend to the period prior to arrest. *United States v. Marion*, 404 U.S. 307, 321 (1971); *United States v. MacDonald,* 456 U.S. 1, 7 (1982). Instead, the relevant period for a speedy trial analysis is the time between arrest and trial after charges are filed. *Ibid.*

As noted above, Levanduski was first arrested on April 27, 2004, when law enforcement officers discovered the cocaine and firearm. He was taken to the DEA office in Detroit and, at approximately 3:15 p.m., wrote and signed a statement. No charges were filed, and he was released the same day. *See* ECF No. 13-5, PageID.837-38. As the Michigan Court of Appeals recognized, this arrest did not trigger the Sixth Amendment's speedy-trial guarantee. *See MacDonald*, 456 U.S. at 7; *United States v. Brown*, 498 F.3d 523, 527 (6th Cir. 2007) ("[T]he Sixth Amendment's speedy-trial guarantee, which explicitly refers to 'the accused,' does not apply until an individual is arrested or indicted.") (quoting *Marion*, 404 U.S. at 324). The court of appeals properly looked to the date of Levanduski's arrest and extradition to Michigan in April 2016 as the commencement of the relevant speedy trial period.

The court then reasoned that the length of the delay in this case, 14 months, did not weigh in Levanduski's favor. "[U]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other facts that go into the balance." *Barker*, 407 U.S. at 530. Under Michigan law, prejudice is generally presumed when the delay is more than 18 months. *People v. Collins*, 388 Mich. 680, 690, 202 N.W.2d 769, 774 (1972) (citing *People v. DenUyl*, 320 Mich. 477, 31 N.W.2d 699 (1948)). But federal law holds that a delay that approaches one year is presumptively prejudicial. *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992).

-13-

The Michigan Court of Appeals held that of the 386 days between Levanduski's arrest and trial, 114 days were attributable to Levanduski and 146 days were attributable to both parties. *Levanduski*, 2019 WL 3806944 at *5. Therefore, the court of appeals held that the second *Barker* second factor — the reason for the delay — weighed against Levanduski.

Levanduski did not assert his right to a speedy trial and the court of appeals weighed this factor against him. Finally, the state court rejected Levanduski's claim that the delay prejudiced the defendant by the loss of Cano and Mendez as defense witnesses and their potentially exculpatory testimony. The court reasoned that because the jury acquitted Levanduski of both gun possession charges, it must have accepted the argument that the gun belonged to Cano. It concluded, therefore that the testimony of those witnesses would not have helped him on those counts. *Levanduski*, 2019 WL 3806944, at *5. It also held that the testimony of those witnesses would not have supported his defense of the drug count because Levanduski did "not describe what Cano and Mendez would have testified to that would have aided his defense to this charge." *Ibid.* It concluded that absent some suggestion that either witness would have helped the defense in some way, "defendant has not shown that the delay was prejudicial to or otherwise impeded his defense." *Ibid.*

The state court's application of *Barker* did not contravene or misapply federal law as determined by the Supreme Court. The delay, although long, was not the result of bad faith or an attempt to gain a tactical advantage. Although neither Cano nor Mendez ever were located for trial, both provided statements to the DEA implicating Levanduski. *Id.* at *4, n.4. Levanduski has not identified any other specific prejudice caused by this delay.

-14-

It is unclear why Levanduski's trial counsel did not move to dismiss the case on speedy trial grounds. Nonetheless, the state courts' conclusion that his Six Amendment right to a speedy trial remained intact was reasonable, and therefore it cannot be said that his coordinate Sixth Amendment right to effective counsel was violated because he cannot show prejudice. *Strickland*, 466 U.S. at 694 (holding that the test for prejudice asks whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different); *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) (reiterating that "it could scarcely be ineffective" for counsel "not to raise" a meritless claim).

Levanduski also contends that the pre-arrest delay violated his rights under the Due Process Clause. The Due Process Clause of the Fifth Amendment provides a defendant limited protection against preindictment delay. *United States v. Lovasco*, 431 U.S. 783, 789 (1977). In determining whether a preindictment delay violates due process, a court must decide whether the delay "violates those fundamental conceptions of justice which lie at the base of our civil and political institutions . . . and which define the community's sense of fair play and decency." *Lovasco*, 431 U.S. at 790 (internal quotations omitted). The Sixth Circuit consistently has read *Lovasco* to hold that dismissal for preindictment delay is warranted only when the defendant shows both substantial prejudice to his right to a fair trial *and* that the delay was intentionally imposed by the government to gain a tactical advantage. *See United States v. Brown*, 959 F.2d 63, 66 (6th Cir. 1992). The prosecution of a defendant following a delay does not necessarily deprive him of due process, even if his defense is somewhat prejudiced by the lapse of time. *Lovasco*, 431 U.S. at 796. "The statutes of limitations, 'which provide predictable, legislatively enacted limits on prosecutorial delay,'

serve as the primary safeguard against 'overly stale criminal charges.'" *United States v. Svilvagyi*, 417 F. App'x 472, 479 (6th Cir. 2011) (quoting *Lovasco*, 431, U.S. 789). A defendant bears a "heavy burden" on a claim that a pre-arrest delay violated due process. *United States v. Baltimore*, 482 F. App'x 977, 981 (6th Cir. 2012) (citing *United States v. Rogers*, 118 F.3d 466, 477 n.10 (6th Cir. 1997) (noting that "[t]he standard for pre-indictment delay is nearly insurmountable, especially because proof of actual prejudice is always speculative")).

The Michigan Court of Appeals held that the pre-arrest delay did not violate the Due Process Clause because Levanduski failed to establish substantial prejudice. *Levanduski*, 2019 WL 3806944 at *4 n.4. This decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Nothing in the record suggests that the State purposely delayed Levanduski's case to gain a tactical advantage. In addition, because neither Cano's nor Mendez's statements to the DEA were exculpatory, Levanduski has not shown substantial prejudice. Counsel, therefore, was not ineffective by failing to raise a due process challenge.

### D.

Levanduski next argues that defense counsel was ineffective by failing to request a due diligence hearing regarding the prosecutor's assertion that Cano and Mendez could not be located for trial.

Under Michigan law, a prosecutor is compelled to render reasonable assistance for locating and serving process upon witnesses upon request of the defendant. Mich. Comp. Laws § 767.40a(5). Where a witness is not produced, a defendant may request a hearing to determine

whether the prosecutor rendered reasonable assistance. *People v. Eccles*, 260 Mich. App. 379, 388-89, 677 N.W.2d 76, 83 (2004). "[D]ue diligence is the attempt to do everything reasonable, not everything possible, to obtain the presence of a witness." *Id*. at 391, 677 N.W.2d at 84.

Following the evidentiary hearing, the trial court held that the prosecutor exercised due diligence in attempting to locate the two missing witnesses. ECF No. 13-9, PageID.1094-95. In light of this decision, which finds support in this record, there is not a reasonable probability that if counsel had moved for a due diligence hearing before or during trial, the court would have found that the prosecutor did not render reasonable assistance. Therefore, an ineffective assistance of counsel claim cannot be predicated on this allegation of deficient performance. *Coley*, 706 F.3d at 752.

E.

Next, Levanduski argues he was denied his right to confront witnesses against him because his trial counsel failed to object to the prosecutor's suggestion during closing argument that the jury compare Levanduski's handwriting in his statement to the DEA with the handwriting in the notebook found in the car he was driving. *See* ECF No. 13-5, PageID.913.

The Michigan Court of Appeals found no plain error in the prosecution's argument or counsel's failure to object. *Levanduski*, 2019 WL 3806944 at *9. The court of appeals reasoned that the notebook and Levanduski's written statement were properly admitted exhibits that the jury was permitted to view during deliberations. *Ibid.* The court also held that the jury's deliberation process based as it was on properly admitted evidence was not subject to attack. *Ibid.*

-17-

"[N]o Supreme Court decision has ever suggested that the Confrontation Clause applies to physical evidence." *Fields v. Jordan*, 86 F.4th 218, 233 (6th Cir. 2023). A habeas petitioner may "seek relief based on just one source: 'Supreme Court' decisions." *Id.* at 231 (quoting 28 U.S.C. § 2254(d)(1)). Because there is no clearly established Supreme Court decision applying the Confrontation Clause to physical evidence, Levanduski cannot show a violation of his right of confrontation. It follows, then that he cannot show that his attorney was ineffective by failing to object. *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020) (failing to raise a meritless objection does not constitute ineffective assistance of counsel).

F.

Finally, Levanduski maintains that defense counsel's failure to advise him properly about the likelihood of conviction and counsel's inaccurate advice about sentence exposure caused him to reject a plea offer.

Immediately before jury selection commenced, the prosecutor placed a plea offer on the record that called for a guilty plea to possession of cocaine with intent to deliver and felony firearm, with a sentencing agreement of five years for the drug offense, plus two years for felony firearm. ECF No. 13-3, PageID.610-11. The prosecutor also explained that, if convicted as charged, Levanduski faced a sentencing guideline range for a minimum sentence under Michigan's indeterminate sentencing scheme of approximately 11 to 18 years on the drug offense. *Ibid.* Levanduski rejected the offer. *Id.* at PageID.611.

Levanduski asserts that he rejected the plea agreement because defense counsel assured him "in all probability he would be acquitted . . . that the sentencing guidelines did not apply" and

that "the trial judge indicated he would impose a three-year sentence if convicted by a jury."  ECF

No. 1, PageID.49-50.

The Sixth Amendment right to counsel extends to the plea-bargaining process.  *Lafler v.*

*Cooper*, 566 U.S. 156, 163 (2012).  A criminal defendant is "'entitled to the effective assistance

of competent counsel'" during plea negotiations.  *Id.* at 162 (quoting *McMann v. Richardson*, 397

U.S. 759, 771 (1970)). To establish prejudice in the context of a rejected plea offer, a defendant

must show that but for the ineffective advice of counsel, there is a reasonable probability that the

defendant would have accepted the plea and the prosecution would not have withdrawn it in light

of intervening circumstances.  *Id.* at 164.  The defendant must also show that the court would have

accepted its terms, and that the conviction or sentence, or both, would have been less severe than

under the judgment and sentence that in fact were imposed.  *Ibid.*

After discussing the *Lafler* standard, the Michigan Court of Appeals denied this claim,

stating:

> Defendant stated on the record at the beginning of trial his decision to reject the
> seven-year plea deal (five years for the narcotics charge plus two years for felony-
> firearm).   [Defense counsel] Kortes testified at the evidentiary hearing that
> defendant made the decision to reject the plea offer because he wanted to go to trial.
> Defendant has provided no support for his claim that the trial court indicated that it
> would sentence defendant to three years in the event of a conviction. . . . In addition,
> defendant testified at the evidentiary hearing that Kortes said he could get a three-
> year plea deal, not that the trial court assured defendant of a three-year sentence.
> Any suggestion that Kortes promised defendant a three-year plea deal is
> inconsistent with the prosecution's placement of the seven-year plea offer on the
> record before trial.
>
> Lastly, defendant's assertion about defense counsel's prediction of the likelihood
> of conviction differs significantly from defense counsel's advice in *Lafler*, 566 U.S.
> at 163, that the defendant "could not be convicted. . . ."  Further, the jury in this
> case found defendant not guilty of the two charges related to possession of the gun

-19-

after asking questions about the definition of possession. Accordingly, defense counsel's optimistic prediction was based in a reasonable understanding of the facts.

In sum, defendant is essentially arguing that he would have accepted a guilty plea if he knew that he would be convicted and sentenced as he was, but this regret is not the proper basis for an ineffective assistance of counsel claim. Therefore, we reject defendant's request for a remand for the prosecution to renew the final plea offer or for an evidentiary hearing on defendant's ineffective assistance of counsel claim related to the plea negotiations.

*Levanduski*, 2019 WL 3806944, at *10.

The Michigan Court of Appeals's decision is neither contrary to nor an unreasonable application of *Strickland* or *Lafler*. In addition to the absence of record support noted by the court of appeals, Levanduski's testimony during the evidentiary hearing regarding the plea offer showed an inability to recall events unfavorable to his argument. For example, Levanduski testified that he "was never advised of a plea offer on the record, never at any point in time." ECF No. 13-9, PageID.1059. After the prosecutor established that the plea offer was placed on the record and that Levanduski rejected it, Levanduski said he simply did not recall being advised of the plea offer. At the same time, he recalled details of unpreserved conversations with defense counsel that were favorable to his claim. *Id.* at PageID.1063. Habeas relief is denied on this claim.

III.

None of the petitioner's claims presents a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d). The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

-20-

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   February 20, 2024